UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIET COFFEE, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> VIATEK CONSUMER PRODUCTS : <br> GROUP INC., LOU LENTINE and : <br> ANGELO RAMSBOTT, : <br> : <br> Defendants. : <br> : | JURY TRIAL DEMANDED <br><br> CIVIL ACTION NO. 08-cv-04686-PKC |

**CIVIL ACTION: AMENDED COMPLAINT**

Plaintiff, by its attorney, Richard M. Mortner, Esq., alleges for its amended complaint as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction of this action under 28 U.S.C. §1332, because the amount in controversy exceeds $1,770,000, exclusive of interest and costs, and because the controversy is between citizens of different foreign states.

2. Personal jurisdiction over the defendants is proper based on New York Civil Practice Law and Rules § 302, and Federal Rule of Civil Procedure 4 (h).

3. Personal jurisdiction and venue in this action are predicated on 28 U.S.C. § 1391(a), since a substantial part of the events and omissions giving rise to the claim occurred in the Southern District of New York and the defendants are subject to personal jurisdiction in the State of New York.

## THE PARTIES

4. Plaintiff Diet Coffee, Inc. is a Delaware Corporation with its principal place of business located at 134 Cedar Street, Nutley, NJ 07110 ("DCI"). DCI is a publicly traded corporation.

5. DCI is engaged in the direct marketing and distribution of the "Ionic Bulb," an energy saving, compact, fluorescent light bulb, that is combined with an ion emitter that removes smoke and dust particles from the air (the "Product"). DCI is marketing the Product through TV infomercials, catalogs, magazines and major U.S. retail and specialty stores and through its website www.ionicbulb.com. DCI is the only company marketing the Product in the United States with a license agreement for the Product from Product's inventor

6. Defendant Viatek Consumer Products Group Inc. ("Viatek") is, upon information and belief, a privately-held Florida corporation, with its principal place of business located at 6881 Kingspointe Parkway, Suite 7, Orlando FL 32819.

7. Defendant Lou Lentine ("Lentine"), has, upon information and belief, been an officer and director of Viatek since its formation. Upon information and belief, Lentine resides in the State of Florida.

8. Defendant Angelo Ramsbott ("Ramsbott"), is, upon information and belief, been an officer and director of Viatek. Upon information and belief, Ramsbott resides in the State of Florida.

## BACKGROUND FACTS

9. On or about March 7, 2007, a meeting was held at DCI's former offices, located at 16 East 40th Street, New York, NY 10036. Among those present at the meeting were, Lou Lentine and Angelo Ramsbott, representing Viatek, and David Attarian, representing DCI.

10. At the March 7, 2007 meeting Mr. Attarian showed defendants Lentine and Ramsbott a demonstration of the Product, and as a result Mr. Lentine and Ramsbott agreed that Viatek would act as a distributor for DCI in connection with the Product. Defendants Lentine offered to place the Product on Home Shopping Network and in several catalogs, and to promote the Product at the National Hardware Show in May 2007.

11. Thus, the March 7, 2007 meeting in New York, DCI offered to supply the Product to Viatek and Viatek agreed to act as a wholesale distributor of the Product (the "Supply and Distribution Agreement").

12. Based upon Viatek's agreement to act as a distributor for the Product, DCI provided trade secrets and proprietary sales materials to.

13. Following the March 7, 2007 meeting, defendants requested plaintiff to provide consulting services in connection with Viatek's plans to market the Product on behalf of plaintiff.

14. Based on defendants' request, plaintiff provided to defendants proprietary marketing materials and trade secrets that plaintiff had developed as a complete marketing program for the Product (collectively referred to as "Plaintiff's Marketing Program") Marketing Program.

15. Plaintiff's Marketing Program, which defendants' requested and received included the following items:

a) pricing information;
b) information pertaining to the production of the product;

3

      c) a TV commercial,
      d) images,
      e) logo,
      f) brochures,
      g) package design,
      h) product test results,
      i) samples, and
      j) instructions to build the demonstration device.

16. The proprietary demonstration device described above consists of two glass chambers one containing an ordinary incandescent light bulb and one containing the Product. Smoke is pumped into these chambers and the lights are turned on, thereby demonstrating the air cleaning ability of the Product in removing the smoke from its chamber, while the other chamber remains full of smoke.

17. Plaintiff provided it Marketing Program to defendants for the purpose of assisting Viatek in making sales of the Product on behalf of plaintiff. Furthermore, based upon Viatek's agreement to act as plaintiff's distributor for the Product, plaintiff provided consulting services to Viatek in the months of March, April and May 2007, to prepare Viatek to promote the Product and to exhibit to the Product at trade shows.

18. In the weeks prior to the National Hardware Show, defendant Lentine e-mailed and called plaintiff two to the three times a day asking for Product information.

19. Defendant Lentine also requested plaintiff to FedEx overnight samples from China to show at the Hardware show, which plaintiff did, at its own expense.

20. On May 8 through May 10, 2007, Viatek exhibited the Product at the National Hardware Show, in Orlando, FL.

21. Upon information and belief, the Product received an excellent reception from buyers at the May 2007 show.

22. Thereafter, defendants stopped returning calls from plaintiff.

23. Following the Hardware Show, Viatek began taking orders and selling the Product for itself under the name Ionic Light Bulb, using the proprietary marketing materials and trade secrets provided to Viatek by plaintiff, including footage from the TV spot.

24. Following the May 2007 hardware show, when plaintiff contacted several consumer products catalog companies, such as Hometrends and Amerimark, plaintiff was told these catalogs were already buying the Product direct from defendant Viatek.

25. Plaintiff purposely held back from marketing the Product to those catalogs based upon representations by defendants Lentine and Ramsbotts that Viatek would approach those catalogues with the Product on behalf of plaintiff.

26. Viatek is selling the Product, but it is not ordering its supply of the Product from plaintiff.

27. Upon information and belief, Viatek is using Plaintiff's Marketing Program to sell the Product on the Home Shopping Network and in various catalogues. Upon information and belief Viatek is using another supplier for the Product.

**FIRST CAUSE OF ACTION**
(Breach of Implied or Constructive Contract against Viatek)

28. Plaintiff here repeats paragraphs 1 through 25 of this Complaint.

29. The Supply and Distribution Agreement between plaintiff and defendant Viatek became binding, as a reverse unilateral contract, upon plaintiff's performance, to wit, providing Plaintiff's Marketing Program to Viatek upon Viatek's request.

30. Alternatively, The Supply and Distribution Agreement entered into between plaintiff and defendant Viatek on March 7, 2007 was a conditional promise which became binding upon defendant Viatek's acceptance and use of plaintiff's Marketing Program.

31.  Plaintiff entered upon the performance of the Supply and Distribution Agreement and duly performed all of the conditions of the contract on its part, providing trade secrets, proprietary marketing materials and consulting services to defendant Viatek, all upon Viatek's request.

32.  Defendant Viatek, without just cause, breached the Supply and Distribution Agreement on its part, obtaining the Product through other channels and converting sales of the Product to itself.

33.  Plaintiff has been at all times been ready, willing, and able to perform the Supply and Distribution Agreement on its part by supplying defendant Viatek's customers with the Product, but defendant Viatek has wrongfully and illegally prevented plaintiff from so performing.

34.  Thus, by reason of the facts hereinbefore alleged plaintiff has sustained damage in an amount to be proven at trial, but believed to exceed $1,770,000.

## SECOND CAUSE OF ACTION
(Unjust Enrichment against Viatek)

35.  Plaintiff here repeats paragraphs 1 through 25 of this Complaint.

36.  Defendant has been unjustly and unfairly enriched, to Plaintiff's substantial expense and detriment.

37.  Equity and good conscience require restitution for plaintiff by defendant Viatek.

38.  Consequently, Defendant is indebted to Plaintiff in an amount to be proven at trial, but believed to exceed $1,770,000.

## THIRD CAUSE OF ACTION

(Constructive Trust against Viatek)

39. Plaintiff here repeats paragraphs 1 through 25 of this Complaint.

40. The relationship of defendant Viatek, as distributor, and plaintiff as supplier of the Product to Viatek, was one of a confidential or fiduciary nature.  Plaintiff, in reliance upon the relationship of trust, accepted the representations of Viatek that the trade secrets, proprietary marketing materials and consulting services provided by plaintiff to Viatek would be used to generate sales of the Product for plaintiff.

41. By reason of the foregoing, plaintiff is entitled to have defendant declared to be the constructive trustee of the sum equal to ninety percent (90%) of the profits realized by Viatek with respect to the Product and/or Ionic Light, after all expenses and carrying charges, received by defendant, and to hold this sum for and on behalf of plaintiff and to transfer and pay over to plaintiff that sum plus any income derived therefrom.

## FOURTH CAUSE OF ACTION
(Accounting against Viatek)

42. Plaintiff here repeats paragraphs 1 through 25 of this Complaint.

43. Defendant, among its duties and obligations as a distributor of the Product for plaintiff, had the primary responsibility of maintaining and keeping records of its sales orders for the Product.

44. Upon information and belief, defendant wrongfully converted to its own use and benefit or to entities controlled by it, sales orders rightly belonging to plaintiff.

45. As a result, plaintiff has been damaged in amounts which can only be determined following an accounting of the sales for the Product booked by defendant.

46. Plaintiff has no adequate remedy at law.

## FIFTH CAUSE OF ACTION
(Fraud against Lou Lentine Angelo Ramsbott and Viatek)

47. Plaintiff here repeats paragraphs 1 through 25 of this Complaint.

48. In furtherance of a scheme to defraud plaintiff, defendants Lentine, Ramsbott and Viatek solicited plaintiff to enter into an agreement with defendant Viatek, pursuant to which plaintiff would provide valuable trade secrets, proprietary marketing materials and consulting services to defendant Viatek, to wit, a Supply and Distribution Agreement.

49. Upon information and belief, defendants Lentine, Ramsbott and Viatek's true purpose for soliciting plaintiff's was to obtain valuable trade secrets, proprietary marketing materials and consulting services and then to sell the Product on their own, obtaining the Product from another supplier.

50. Defendant Ramsbott, speaking to David Attarian at the March 7, 2007 meeting at plaintiff's New York office fraudulently represented that Viatek would act as plaintiff's distributor for the Product.

51. Defendant Lentine, speaking to David Attarian at the March 7, 2007 meeting at plaintiff's New York office fraudulently represented that Viatek would approach Home Shopping Network on behalf of plaintiff, as plaintiff's distributor for the Product.

52. Defendants Ramsbott and Lentine's aforesaid promises were fraudulent because upon information and belief, Mr. Lentine had no intention to follow through with the promise to act as plaintiff's distributor for the Product.

53. The foregoing representations of defendants Lentine and Ramsbott were fraudulent because the true intent of defendants Lentine and Ramsbott was to acquire the trade

8

secrets, proprietary marketing materials and consulting services of plaintiff in connection with the Product and then to become a competitor of plaintiff.

54. At the times that defendant solicited plaintiff to commit to accept Viatek as a trusted distributor, plaintiff reasonably relied on the promises and representations made by defendants Lentine and Ramsbott. Plaintiff had no reason to believe defendants' representations were in any way false, and plaintiff reasonably relied on such representations. Plaintiff was not in a position to have any information contrary to defendant's representations, and believed them to be true.

55. Upon such reasonable reliance, plaintiff made the decision to provide defendants with trade secrets, proprietary marketing materials and consulting services of plaintiff in connection with the Product.

56. However, defendants made the foregoing misrepresentations with knowledge of their falsity or in reckless disregard of their truth or falsity, and with the intent to deceive plaintiff.

57. At the time the representations as alleged hereinabove were made by defendants, defendants had the express intent and purpose to cause plaintiff to provide the trade secrets, proprietary marketing materials and consulting services of plaintiff in connection with the Product.

58. At the time such representations were made defendants knew such representations to be false and never intended to provide plaintiff with sales orders for the Product, or to act as a distributor of the Product for plaintiff, as represented; and defendants made such representations solely to induce plaintiff, fraudulently, into providing defendants the

trade secrets, proprietary marketing materials and consulting services of plaintiff in connection with the Product.

59. Had plaintiff known such representations were false, plaintiff would never have provided the trade secrets, proprietary marketing materials and consulting services of plaintiff in connection with the Product to defendants.

60. As a direct and proximate result of the fraudulent misrepresentations of defendants, plaintiff were induced to provide the trade secrets, proprietary marketing materials and consulting services of plaintiff in connection with the Product and to thereby suffer substantial economic and special damages, including, but not limited to a loss of income and other special and economic damages in an amount to be proven at trial, but believed to exceed $1,770,000.

## SIXTH CAUSE OF ACTION
(Injunction against Lou Lentine, Angelo Ramsbott and Viatek)

61. Plaintiff here repeats paragraphs 1 through 22 of this Complaint.

62. Plaintiff developed a developing a marketing system for the Product, including proprietary marketing materials and trade secrets.

63. Defendants Lentine and Ramsbott assisted Defendant Viatek in developing a competing marketing system for the Product.

64. In the course of their work for Defendant Viatek, defendants Lentine and Ramsbott utilized the peculiar confidential knowledge and trade secrets and proprietary materials of the Product Marketing System acquired from Plaintiff while Defendants were representing themselves as plaintiff's distributor.

65. Such conduct by defendants Lentine and Ramsbott is a breach of his fiduciary duty to Plaintiff, and Plaintiff has been damaged thereby in an amount to be determined at the trial of this action.

66. Plaintiff will continue to suffer irreparable injury and harm through the loss of confidential information and trade secrets.

67. Plaintiff is without any adequate remedy at law and requires injunctive relief against the continuation by defendants Lentine, Ramsbott and Viatek of their unlawful conduct.

WHEREFORE, plaintiff respectfully requests the following relief:

(i) On the First Cause of Action against defendant Viatek for breach of implied-in-fact or constructive contract against defendant Viatek, a judgment with costs in an amount to be proven at trial, but believed to exceed $1,770,000;

(ii) On the Second Cause of Action, against defendant Viatek for unjust enrichment in an amount to be proven at trial, but believed to exceed $1,770,000;

(iii) On the Third Cause of Action, constructive trust impressed upon the profits of defendant Viatek from the sales of the Product;

(iv) On the Fourth Cause of Action against defendant Viatek, an accounting be had of all the sales of the Product and profits therefrom, to be released to plaintiffs, and for compensatory damages in an amount to be proved at trial;

(v) On the Fifth Cause of Action for fraud, against defendants Lou Lentine, Angelo Ramsbott and Viatek, a judgment with costs in an amount to be proven at trial, but believed to exceed $1,770,000;

    (vi)    On the Sixth Cause of Action against defendants Lou Lentine, Angelo Ramsbott and Viatek, a judgment awarding Plaintiff appropriate injunctive relief; and

    (vii)    Such other and further relief as the Court deems just and proper.

Date: May 20, 2008
New York, NY

    The Mortner Law Office, PC

By: _____
    Richard M. Mortner (RM-0019)
40 Broad Street, Suite 500
New York, NY 10004
Tel: (212) 480-2181
Attorney for plaintiff