UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIET COFFEE, INC.

                    Plaintiff,

        v.

VIATEK CONSUMER PRODUCTS GROUP,
INC. LOU LENTINE and ANGELO
RAMSBOTT

                    Defendants.

Civil Action No. CV 08-cv-04686-PKC

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)

FISH & RICHARDSON P.C.

Matthew L. Levine (ML-6247)
153 E. 53rd Street, 52nd Floor
New York, New York 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Craig R. Smith (BBO 636,723)
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906
(application for pro hac vice admission forthcoming)

*Attorneys for Defendants*
Viatek Consumer Products Group Inc.,
Lou Lentine, and Angelo Ramsbott

July 28, 2008

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   STATEMENT OF FACTS...................................................................2

    A.   The Parties ................................................................................2

    B.   Contacts between the parties....................................................2

    C.   Defendants' Lack Of Contact With New York........................3

III.  THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS ...................................................................................4

    A.   Applicable Law .........................................................................4

    B.   The Court lacks personal jurisdiction over the defendants under the New York long-arm statute...................................................5

        1.   DCI does not allege facts sufficient to support personal jurisdiction over any of the defendants under CPLR §§ 302(a)(3) or 302(a)(4) on its first, second, third, fourth, fifth, or sixth causes of action ........................6

        2.   DCI does not allege facts sufficient to support personal jurisdiction over Viatek under CPLR §§ 302(a)(1) or 302(a)(2) on its first, second, third, fourth, or sixth causes of action ................................................................7

        3.   DCI does not allege facts sufficient to support personal jurisdiction over Lentine or Ramsbott under CPLR §§ 302(a)(1) or 302(a)(2) on its fifth or sixth causes of action..................................................................15

    C.   The exercise of personal jurisdiction here would violate due process.....................................................................................16

        1.   DCI has not met its burden to show that any of the defendants has the necessary "minimum contacts" with the State of New York.................................................17

        2.   It would be burdensome and inefficient, and thus offensive to "traditional notions of fair play and substantial justice," to subject the defendants to jurisdiction in New York .............................................18

IV.   VENUE IS NOT PROPER IN THIS COURT ................................19

V.    CONCLUSION................................................................................20

## I.   INTRODUCTION

In this case, a Delaware corporation is suing a Florida corporation, as well as two Florida residents, for breach of an implied agreement to market a product made in China, at a Florida trade show and on National TV, and to distribute it throughout the US. This case has no business in a New York court. Neither personal jurisdiction nor venue is proper here.

The plaintiff attempts to conjure jurisdiction and venue out of a short meeting that the defendants attended in Manhattan, and some phone calls and emails that may or may not have been received in New York. But these contacts are far from being sufficient to constitute the "purposeful availment" of the state that the law requires. Defendants did not initiate the relationship with the plaintiff or purposefully choose to meet in New York. Indeed, the meeting was intended to be with an entirely different party, on an entirely different matter. Defendants had never even heard of the plaintiff, nor of the plaintiff's product. And when Plaintiff and its product happened to come up in conversation, defendants agreed to discuss the matter further in future. All the real negotiations took place remotely or in out-of-state locations. Ultimately no deal could be reached, and no contract was ever signed. In short, the defendants' contacts with New York were "fortuitous" and insignificant, not "purposeful" and substantial.

Personal jurisdiction and venue are therefore not proper in the state, and the court should dismiss the complaint, or transfer the case to the Middle District of Florida.

## II.    STATEMENT OF FACTS

### A.    THE PARTIES

The plaintiff, Diet Coffee, Inc. ("DCI"), is a corporation organized under the laws of Delaware with its principal place of business in New Jersey. (Complaint ¶ 4)  Defendant Viatek Consumer Products Group Inc. ("Viatek") is a Florida corporation, and has its principal place of business in Florida. (Lentine Decl. ¶ 4)  Defendants Louis Lentine and Angelo Ramsbott are officers of Viatek. (Complaint ¶¶ 7–8).  Both live in Florida. (Id.)

### B.    CONTACTS BETWEEN THE PARTIES

On or about March 15, 2007 Viatek representatives attended the International Housewares Trade Show in Chicago, Illinois. (Lentine Decl. ¶ 9)  Mr. Avi Sivan approached Viatek's booth at the Show, with a proposal to help take Viatek public. (Id.).  Mr. Sivan did not identify himself as being connected to DCI (Id. ¶ 13).  Mr. Sivan invited Mr. Ramsbott and Mr. Lentine to come to New York and discuss this proposal with him. (Id. ¶ 10).

Some time after that, Mr. Ramsbott and Mr. Lentine flew to New York City to discuss this proposal. (Id. ¶ 11)  There is a dispute about when this meeting ("the March meeting") took place.  DCI claims it was on or about March 7, 2007 (Complaint ¶ 9) but Mr. Lentine remembers it as being on or about March 22. (Lentine Decl.¶ 11)  In any case, the meeting lasted about two or three hours. (Id.).

The meeting began with a discussion of Mr. Sivan's proposal to help take Viatek public (Id. ¶ 12), but no agreement could be reached on this issue. (Id.)  In the course of the discussion, however, Mr. Sivan spoke about other companies he had helped take public. (Id. ¶ 13)  He claimed that DCI was one of these companies. (Id.)  This was the first time Mr. Lentine and Mr. Ramsbott had heard of DCI. (Id.)

2

In the course of the discussion, Mr. Sivan also mentioned several different products that he had been involved with. (Id. ¶ 14)  One of these products was the "Ionic Bulb." (Id.)  This was the first mention that Mr. Lentine had heard of the Ionic Bulb in his interactions with Mr. Sivan. (Id.)  DCI does not allege that it had told Mr. Ramsbott of the Ionic Bulb before this, either.

Mr. Sivan suggested that Viatek might be able to help DCI sell the Ionic Bulb. (Id. ¶ 15)  This proposal was discussed briefly, and Mr. Lentine and Mr. Ramsbott agreed that it would be worth discussing further in the future. (Id.)  No agreement of any kind was reached at the meeting. (Lentine Decl. ¶ 16)  DCI's allegation that "Viatek agreed to act as a wholesale distributor of the Product" (Complaint ¶ 11) is inaccurate and not supported by any evidence.  Negotiations continued by phone and email over the next few months.  The question of price, among other things, was still under discussion in April. (Lentine Decl. ¶ 17 & Exh. A)

No contract was ultimately signed between the parties. (Id. ¶ 20)  Among the reasons for this was that DCI was unwilling or unable to provide any information relating to the intellectual property it claimed to have in the Ionic Bulb. (Id. ¶¶ 18–19 & Exh. B).

## C.    DEFENDANTS' LACK OF CONTACT WITH NEW YORK

Viatek is a Florida corporation with its principal place of business in Florida. (Id. ¶ 4)  It is not registered to do business in the State of New York. (Id. ¶ 5)  It has no offices, facilities, employees or agents in New York. (Id. ¶ 6)  It owns no property in New York. (Id. ¶ 7)  It also has no agent for service of process in New York. (Id. ¶ 8)

Messrs. Lentine and Ramsbott live and work in Florida. (Complaint ¶¶ 7–8)  Mr. Lentine owns no property in New York. (Lentine Decl. ¶ 7)  There is no allegation that Mr. Ramsbott owns any property in New York.

## III.    THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

The Court does not have personal jurisdiction over defendants Viatek, Lentine or Rams-bott.  Plaintiff relies on New York Civil Practice Law and Rules § 302 for personal jurisdiction over the defendants (Complaint ¶ 2), but has not alleged facts sufficient to establish a prima facie case of jurisdiction under any section of that statute over defendant Viatek for their first, second, third, fourth or sixth causes of action, or over defendants Lentine and Ramsbott for their fifth and sixth causes of action.  Moreover, the Court's exercise of jurisdiction over these defendants would offend constitutional due process.

### A.    APPLICABLE LAW

Plaintiff bears the burden of establishing jurisdiction over a defendant in a motion to dis-miss pursuant to Rule 12(b)(2).[1]

In order to determine under New York law whether personal jurisdiction exists over a non-domiciliary defendant, the Court must first determine whether application of jurisdiction complies with the relevant long arm statute, CPLR § 302.[2]  CPLR § 302(a) provides for specific jurisdiction by acts of non-domiciliaries where the non-domiciliary:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for de-famation of character arising from the act, if he
>
> > (i)  regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

---

[1]    *Ross v. UKI Ltd.*, 2004 WL 384885, *3 (S.D.N.Y. March 1, 2004) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)).

[2]    *LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E.2d 883, 886 (N.Y. 2000).

revenue from goods used or consumed or services ren-
dered, in the state, or

(ii) expects or should reasonably expect the act to have
consequences in the state and derives substantial reve-
nue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the
state.[3]

A plaintiff cannot meet the burden of establishing jurisdiction by relying on conclusory
statements or allegations.[4] Thus, unless a plaintiff can affirmatively show that the Court has ju-
risdiction over a non-domiciliary defendant, the complaint must be dismissed.[5]

If the New York long-arm statute applies, the Court must then determine whether exercis-
ing jurisdiction over the non-domiciliary defendant complies with constitutional due process.[6]
"[C]onstitutional limits are satisfied if a nonresident defendant has sufficient 'minimum contacts'
with the forum state such that exercise of jurisdiction comports with 'traditional notions of fair
play and substantial justice.'"[7]

## B.    THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFEN-
DANTS UNDER THE NEW YORK LONG-ARM STATUTE

DCI has the burden of establishing personal jurisdiction with respect to each claim as-
serted,[8] without relying on mere conclusory statements or allegations.[9] In its complaint, DCI has
asserted only that "personal jurisdiction over the defendants is proper based on [CPLR] § 302"

---

[3]   N.Y. C.P.L.R. 302(a) (McKinney 2004).
[4]   *Ross*, 2004 WL 384885 at *3 (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).
[5]   *Teplin v. Manafort*, 438 N.Y.S.2d 84, 85 (N.Y. 1981).
[6]   *Ross*, 2004 WL 284885 at *3.
[7]   *Packer v. TDI Systems, Inc.*, 959 F.Supp. 192, 196 (S.D.N.Y. 1997) (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 326 (1945) (internal citation omitted)).
[8]   *Dux Interiors, Inc. v. Dyevich*, 2007 WL 2789443 at *2 (S.D.N.Y. 2007) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).
[9]   *Ross*, 2004 WL 384885 at *3 (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

(Complaint ¶ 2). It has not identified which of CPLR § 302's four subdivisions it relies on for any of its six claims. We will therefore analyze all four statutory sub-divisions in the discussion that follows.

This Court and the New York Court of Appeals have both counseled caution in the application of long-arm jurisdiction:

> In [their] enthusiasm to implement the reach of the long-arm statute (CPLR 302), *[courts] should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial general business activities*. Only in a rare case should they be compelled to answer suit in a jurisdiction with which they have the barest of contact.[10]

As discussed in detail below, Defendants here have only the "barest of contact" with New York. Accordingly, they should not be subject to jurisdiction in this court.

> **1.    DCI does not allege facts sufficient to support personal jurisdiction over any of the defendants under CPLR §§ 302(a)(3) or 302(a)(4) on its first, second, third, fourth, fifth, or sixth causes of action**

Personal jurisdiction over the defendants is not proper under CPLR § 302(a)(3). First, DCI does not allege the necessary "injury to person or property within [New York]."[11] None of the harms it claims to have suffered are New York-specific; they affect New York, if at all, only because DCI happens to operate in that state as well as elsewhere. But such injuries—"which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state"[12]—do not satisfy § 302(a)(3).[13] Second, DCI does not allege that any defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [New York],"[14] as

---

[10]    *Spencer Trask Ventures, Inc. v. Archos S.A.*, 2002 WL 417192 at *3–*4 (S.D.N.Y. 2002) (citing *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 383 (1967)) (emphasis added).
[11]    N.Y. C.P.L.R. § 302(a)(3) (McKinney 2004).
[12]    *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300, 303 (2d Cir. 1968) (citations omitted).
[13]    *Id.*
[14]    N.Y. C.P.L.R. § 302(a)(3)(i) (McKinney 2004).

§ 302(a)(3)(i) requires, nor that any defendant "derives substantial revenue from interstate or international commerce,"[15] as § 302(a)(3)(ii) does.[16]

Personal jurisdiction is also not proper under CPLR § 302(a)(4). DCI does not allege that any of the defendants "owns, uses or possesses any real property situated within [New York],"[17] as required by this section.

### 2. DCI does not allege facts sufficient to support personal jurisdiction over Viatek under CPLR §§ 302(a)(1) or 302(a)(2) on its first, second, third, fourth, or sixth causes of action

DCI's first, second, third and sixth causes of action against Viatek sound in contract and breach of fiduciary duty, and therefore are analyzed under CPLR § 302(a)(1).[18]

To establish jurisdiction over a defendant under CPLR § 302(a)(1), a plaintiff must show "at minimum, 'some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State . . . ,'"[19] and this act must have a "substantial relationship" to the cause of action asserted.[20] The totality of the surrounding circumstances is considered in making these determinations.[21]

Viatek has no offices or facilities in New York; it is not registered to do business there; it owns no in-state property; it has not a single in-state employee. DCI has been able to allege only two "acts" by Viatek that have any connection with the state. The first is a meeting that Lentine and Ramsbott attended in New York in March 2007 (Complaint ¶ 9); the second, some phone calls and emails that Lentine made to DCI (Complaint ¶ 18), although these are not specifically

---

[15] *Id.* at § 302(a)(3)(ii).

[16] *See M & M Packaging, Inc. v. Kole*, 183 Fed.Appx. 112, 114 (2d Cir. 2006) (affirming dismissal for lack of personal jurisdiction under CPLR § 302(a)(3)(ii) where the plaintiff "nowhere in its submissions to the district court . . . allege[d] that Defendants-Appellees derive[d] substantial revenue from interstate or international commerce.").

[17] N.Y. C.P.L.R. § 302(a)(4) (McKinney 2004).

[18] *See Barrett v. Tema Development (1988), Inc.*, 463 F.Supp.2d 423 (S.D.N.Y. 2006), *aff'd* 251 Fed.Appx. 698 (2d Cir. 2007) (analyzing personal jurisdiction over breach of contract and breach of fiduciary duty claims under CPLR § 302(a)(1)).

[19] *Spencer Trask*, 2002 WL 417192 at *3.

7

alleged to have been directed to New York. These acts are too meager to constitute "purposeful availment" of the privilege of conducting activities in the state under New York law.

> a.   **A single in-state meeting is insufficient for jurisdiction unless it is "the beginning and end of negotiations" for a contract or is supplemented by substantial other jurisdiction-creating factors**

Under New York law, courts look to the totality of the circumstances to determine whether defendants' acts show "purposeful availment" and have a substantial relationship to the cause of action asserted.[22] In making this determination, courts "have been justifiably skeptical of attempts to assert personal jurisdiction over a defendant based on a single meeting in New York, especially where that meeting did not play a significant role in establishing or substantially furthering the relationship of the parties."[23] A single meeting has generally been found to create jurisdiction only where it is "the beginning and end of negotiations" for a contract,[24] or it is supplemented by substantial other jurisdiction-creating factors.[25]

Some of the factors that courts have looked to involve the relationship between the parties and the circumstances of their decision to meet in New York. For instance, courts have inquired: (1) whether the defendant sought out the New York plaintiff, or vice versa;[26] (2) whether the defendant was the one to propose that the meeting be held in New York;[27] (3) whether the defendant's only purpose in travelling to New York was to discuss the alleged contract;[28] and

---

[20]   *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983) .

[21]   *Spencer Trask*, 2002 WL 417192 at *3.

[22]   *Spencer Trask*, 2002 WL 417192 at *3; *Beacon Enters*, 715 F.2d at 764.

[23]   *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F.Supp.2d 391, 398–399 (S.D.N.Y. 2004).

[24]   *Gates v. Pinnacle Communications Corp.*, 623 F.Supp. 38, 42 (S.D.N.Y. 1985) ("A single meeting in New York meets the requirements of NYCPLR § 302(a)(1) only where that meeting is the beginning and end of negotiations.")

[25]   *See, e.g., Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 Fed.Appx. 192, 194–95 (2d Cir. 2004) (finding personal jurisdiction under § 302(a)(1) where, in addition to two "substantive and substantial" meetings about a contract in New York and "other communications" with the plaintiff in New York, a contract was signed shortly afterwards, a New York bank was involved in transferring the money for this contract, and defendants appointed a New York-based agent to answer plaintiffs' questions about the transaction).

[26]   *See, e.g., Painewebber*, 1995 WL 296398 at *4.

[27]   *See, e.g., id.*

[28]   *See, e.g., Barrett*, 463 F.Supp.2d at 423.

8

(4) whether the defendant had an on-going contractual relationship with a New York corporation.[29]

Other important factors relate to the connection between the New York meeting and the alleged contract. For instance, courts have inquired: (5) whether the contract was negotiated and executed in New York;[30] (6) whether the alleged breach of contract took place in New York;[31] (7) whether the defendant visited New York again after the contract was executed for further meetings about it;[32] and (8) whether the defendant had "other communications" with plaintiffs in New York.[33]

Still other factors relate to whether the alleged contract is so closely connected to New York that it itself represents an attempt to do business in the state. Among them are: (9) whether performance was to take place in New York;[34] (10) whether the defendant agreed to a choice-of-law provision naming New York law;[35] (11) whether the contract requires the defendant to send notices and payments into New York or subjects it to supervision by a New York corporation;[36] (12) whether money for the transaction was to come from a New York bank;[37] and (13) whether the defendant appointed an agent in New York to communicate further with plaintiffs about the deal.[38]

In this case the March meeting was nothing like "the beginning and end of negotiations," and *twelve* of the other thirteen factors identified above weigh against jurisdiction. CPLR § 302(a)(1) does not reach the defendants in this case.

---

[29] *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 27 (2d Cir. 1996).
[30] *Id.*
[31] *See, e.g., Barrett v. Tema Development (1988), Inc.*, 251 Fed.Appx. 698, 700 (2d Cir. 2007) (hereinafter *Barrett II*).
[32] *Agency Rent A Car*, 98 F.3d at 27 (2d Cir. 1996).
[33] *See, e.g., Druck*, 102 Fed.Appx. at 194 (2d Cir. 2004).
[34] *See, e.g., Painewebber*, 1995 WL 296398 at *4.
[35] *Agency Rent A Car*, 98 F.3d at 27 (2d Cir. 1996).
[36] *Id.*
[37] *See, e.g., Druck*, 102 Fed.Appx. at 194 (2d Cir. 2004).

9

**b.     The March meeting was a preliminary discussion, and not the "beginning and end of negotiations"**

The March meeting in this case was hardly even a beginning to—much less "the beginning and end of"—negotiations.  Lentine and Ramsbott went to the meeting intending to discuss taking Viatek public, and with no idea of discussing the sale or distribution of Ionic Bulbs.  They had never even heard of DCI before the meeting. (Lentine Decl. ¶ 13)  Although DCI alleges that at the meeting "Lentine and Ramsbott agreed that Viatek would act as a distributor for DCI" (Complaint ¶ 10), which is disputed by Viatek, DCI does not allege that any of the terms of this alleged "agreement" were discussed, still less agreed to.  Indeed, no such terms were agreed (Lentine Decl. ¶ 15), because the meeting was in fact a preliminary discussion of the possibility of doing business in the future (Id. at ¶ 16).  Had there been a complete meeting of minds at the March meeting, it would be strange indeed that these sophisticated commercial parties *never* put it in writing.

Even by DCI's account, there was no such meeting of minds.  For one thing, DCI admits that many critical terms of the alleged contract remained unresolved at the end of the March meeting.  For example, it admits that "pricing information" was a component of its allegedly proprietary "Marketing Program," (Complaint ¶ 15) and was not given to Viatek until *after* the meeting (id. at ¶¶ 13–14).  For another thing, correspondence between the parties provides further evidence of the preliminary nature of the discussions.  Well after the meeting, the parties continued to negotiate a potential agreement.  They were still discussing a price on April 13, 2007, more than a month after the meeting (Lentine Decl., Ex. A) and negotiations continued for over seven months (Id., Ex. B).

---

[38] *See, e.g., id.*

c.    **Factors involving the relationship between the parties and the circumstances of their decision to meet in New York weigh against jurisdiction**

Turning to the factors above, all but one weigh heavily against a finding of personal jurisdiction in this case. First, the circumstances of how the parties first came across each other and how they came to meet in New York weigh against jurisdiction. Avi Sivan initiated contact with Viatek, not vice versa (Factor 1). (Lentine Decl. ¶ 9) DCI was not even mentioned until the March meeting. Likewise it was Sivan, not Viatek, who proposed that the meeting should be in New York (Factor 2) (Id. ¶ 10); Viatek agreed out of courtesy, not out of any "purpose" to transact business in New York. Third, when Lentine and Ramsbott went to New York, it was to discuss Sivan's proposal to help take Viatek public (Id. ¶ 11), not to discuss distributing Ionic Bulbs for DCI (Factor 3). At the time, they had never even heard of DCI. (Id. ¶ 13) Thus, Viatek's contact with DCI, their meeting in New York, and the eventual brief discussion of the Ionic Bulbs were all fortuitous, not "purposeful." Finally, DCI has made no allegation that Viatek has an ongoing relationship with any New York corporation (Factor 4).

d.    **Factors involving the connection between the New York meeting and the alleged agreement weigh against jurisdiction**

All but one of the factors relating to the connection between the New York meeting and the alleged agreement also weigh against jurisdiction here. As described above, only the most preliminary negotiations took place in New York—even by DCI's account. The actual elements of the potential agreement were discussed outside the state, and in fact ultimately no agreement could be reached at all. In addition, DCI admits that Viatek did not execute the alleged contract in New York, but rather in Florida (by their alleged "acceptance" of the "Marketing Program"). (Complaint ¶ 29) Thus the alleged contract was not significantly negotiated in New York or executed there, and Factor 5 weighs against jurisdiction.

11

Turning to Factor 6, the distribution activities that were allegedly agreed to—"plac[ing] the product on Home Shopping Network and in several catalogs and . . . promot[ing it] at the National Hardware Show" (Complaint ¶¶ 10–11)—are all either national in character or relate only to the State of Florida. Thus, while DCI's complaint is unclear about what acts or omissions it considers to have constituted breach, it is nevertheless clear that they did not involve New York. Indeed, they *cannot* have involved New York, because DCI alleges that the agreement became effective only after the March meeting, and by that time Viatek's alleged contacts with New York were already over. So Factor 6 weighs against jurisdiction. DCI also does not allege that Viatek's officers ever visited New York to confer about the alleged agreement after it became operative (Factor 7).

Finally, on Factor 8, DCI does allege that Viatek communicated with it after the meeting, but, as will be discussed below, this factor has been found to have little, if any, weight on facts like these.

### e.    Factors involving the relationship between the alleged contract and the State of New York weigh against jurisdiction

Finally, all the factors that relate to the connection between the alleged contract and the state of New York weigh heavily against jurisdiction. DCI does not allege that the contract was to be performed in New York (Factor 9). As described above, the alleged "agreement" was to be entirely performed through nationwide channels and in the state of Florida. Nor is there any allegation that Viatek agreed to a choice-of-law provision naming New York law (Factor 9), or to send notice or payments into, or submit to supervision by, any New York corporation (Factor 10). There is also no allegation that Viatek agreed to interact with a New York bank with regard to this transaction (Factor 11), or that it appointed any sort of agent in New York to communicate with DCI (Factor 12). The contract for which Viatek was allegedly bargaining, therefore, has nothing whatever to do with the state of New York. This cuts strongly against the idea

12

that Viatek "purposefully availed" itself of the privilege of doing business in the state by discussing it.

> **f.      Viatek's phone calls and emails are irrelevant to jurisdiction because they were not related to a transaction that has its center of gravity in New York**

Returning to Factor 8, calls and emails from Viatek in Florida should carry little, if any, weight here.  First, DCI does not allege that the phone calls and emails were directed to its offices in New York.  Those to its offices in New Jersey and elsewhere would, of course, be irrelevant to jurisdiction in this state.  Second, even if the calls and emails were received in New York, they are "insignificant for purposes of jurisdiction" on the present facts.[39]  "[C]ommunications into New York will only . . . establish personal jurisdiction if they were related to some transaction that had its *center of gravity inside New York*, into which a defendant projected himself."[40]  For example, in *Parke-Bernet Galleries, Inc. v. Franklyn*,[41] personal jurisdiction was found over a defendant who participated remotely in a New York art auction by telephone, and in *Liberatore v. Calvino*[42] an "out-of-state attorney [was found to have] clearly projected himself into the forum by purposefully pursuing a legal remedy for his client in New York for the personal injury she had sustained [there]."[43]  The communications in the present case are very different.  They relate to an alleged transaction between a Florida corporation (Lentine Decl. ¶ 4) and a Delaware one (Complaint ¶ 4), for distribution of a product made in China (Complaint ¶ 19), and for marketing it on a nationwide television channel (Id. ¶ 10) and at a Florida trade show. (Id.)  Wherever the "center of gravity" of this transaction may be, it certainly does not lie in New York.

---

[39]   *Painewebber v. WHV*, 1995 WL 296398 at *3 (S.D.N.Y. 1995).
[40]   *Barrett v. Tema Development (1988), Inc.*, 463 F.Supp.2d 423, 431 (S.D.N.Y. 2006), *aff'd*, 251 Fed.Appx. 698 (2d Cir. 2007) (quoting *Maranga v. Vira*, 386 F.Supp.2d 299, 306 (S.D.N.Y. 2005)) (emphasis added).
[41]   308 N.Y.S.2d 337 (1970).
[42]   742 N.Y.S.2d 291 (N.Y.App.Div.2002).
[43]   *Tradem, Inc. v. Stainbrook*, 2004 WL 1047956 at *3 (S.D.N.Y. 2004) (declining to extend *Liberatore* to attach personal jurisdiction to everyday commercial communications by mail and telephone).

**g.     This Court has declined to assert jurisdiction over defendants with much stronger New York contacts than Viatek**

Viatek's relevant contacts with New York are so slim that this is an easy case; this Court has found a lack of personal jurisdiction in much harder ones. For instance, in *Barrett v. Tema Development (1988), Inc.*,[44] this Court found (and the Second Circuit affirmed) that even though (1) "[defendant] entered into a [written] contract (the IUA) with a New York resident"; (2) "a single meeting [took place] in New York between the parties where the IUA was discussed"; (3) "a New York bank account [was] referenced in the IUA"; and (4) "a New York law firm [was used] in connection with negotiating an investment deal . . . that allegedly arose out of the IUA,"[45] nevertheless "[defendant's] connections with New York through the IUA [were still] considerably more 'fortuitous' and 'random' than they [were] purposefully directed at New York as required for jurisdiction under CPLR 302(a)(1)."[46] Likewise, in *Painewebber v. WHV*,[47] this Court found that a nonresident corporation did not purposefully avail itself of the privilege of doing business in New York when it negotiated a written contract by phone and mail with a New York plaintiff, visited the state *three* times thereafter to discuss performance, and knew that performance was taking place largely in New York.[48]   The Court found these factors were outweighed by the facts that the New York plaintiffs had initiated the transaction, that negotiations had been conducted remotely, and that the New York services contracted for—financial services regarding the sale of out-of-state assets—were in furtherance of out-of-state transactions.[49]

---

[44]   463 F.Supp.2d 423 (S.D.N.Y. 2006), *aff'd*, 251 Fed.Appx. 698 (2d Cir. 2007).
[45]   *Id.* at 433.
[46]   *Id.*.
[47]   1995 WL 296398 (S.D.N.Y. 1995).
[48]   *Id.* at *3–*4.
[49]   *Id.*

14

### h.    Conclusion

For the foregoing reasons, DCI has not carried its burden to establish a prima facie case of personal jurisdiction over Viatek under the New York long-arm statute with respect to its first, second, third and sixth causes of action.

DCI's fourth cause of action against Viatek is for "accounting," which seems to relate to the tort of wrongful conversion. (Complaint ¶ 44)  However, DCI does not allege that the tortious act was "committed . . . within the state [of New York],"[50] and so CPLR § 302(a)(2) does not give any additional grounds for jurisdiction over this claim.  Therefore, the court has no personal jurisdiction over Viatek on this claim, either.

### 3.    DCI does not allege facts sufficient to support personal jurisdiction over Lentine or Ramsbott under CPLR §§ 302(a)(1) or 302(a)(2) on its fifth or sixth causes of action

DCI has not identified which of CPLR § 302's four subdivisions it relies on for personal jurisdiction over defendants Lentine and Ramsbott.  Because it alleges both fraud (fifth cause of action) and "injunction" (sixth cause of action), and because "injunction" seems intended to relate to an alleged breach of fiduciary duty (Complaint ¶ 65), it might be relying on either CPLR § 302(a)(1) or CPLR § 302(a)(2) for personal jurisdiction over them.  It does not, however, allege facts to support such a finding under either one.

Lentine and Ramsbott's connections with New York are not alleged to be any greater than Viatek's.  Indeed, they are less so, because Lentine and Ramsbott attended the March meeting on Viatek's behalf, not their own.  Even less than Viatek, therefore, did they "purposefully avail" themselves of the privilege of doing business in New York.[51]

---

[50] N.Y. C.P.L.R. § 302(a)(2) (McKinney 2004).

[51] *See Benson and Assocs., Inc. v. Orthopedic Network of New Jersey*, 1998 WL 388531 at *3 (S.D.N.Y. 1998) (finding that the fact that an officer attended a meeting only in his corporate capacity weighed very heavily against a finding of personal jurisdiction over him individually).

Indeed, this fact is dispositive of the question of jurisdiction under both § 302(a)(1) and § 302(a)(2) in the present instance. Although New York law does not absolutely protect an individual from jurisdiction arising out of acts she performs in her corporate capacity,[52] it does require a showing that (among other things) "the corporation's activities were performed for the benefit of the individual defendant" before it will allow it.[53] Because DCI has made no such allegation, this Court has no personal jurisdiction over Lentine or Ramsbott under either provision.

For the foregoing reasons, DCI has not carried its burden to establish a prima facie case of personal jurisdiction over Lentine and Ramsbott under the New York long-arm statute.

## C. THE EXERCISE OF PERSONAL JURISDICTION HERE WOULD VIOLATE DUE PROCESS

An exercise of personal jurisdiction satisfies due process when (1) the defendant has "minimum contacts" with the forum state, and (2) jurisdiction comports with "traditional notions of fair play and substantial justice."[54] Minimum contacts exist when the defendant has "purposefully avail[ed itself] of the privilege of conducting activities within the forum State . . . ."[55] The "purposeful availment" requirement is the "constitutional touchstone" of due process; it protects the defendant from being haled into court in a distant and unfamiliar forum.[56]

Because DCI has not alleged contacts with New York that are so "continuous and systematic" as to subject defendants to the jurisdiction of New York courts on a general jurisdiction

---

[52]  See *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 472 (1988).
[53]  *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 389 (S.D.N.Y. 2006).
[54]  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
[55]  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).
[56]  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

theory,[57] it has the additional burden of showing that the suit "aris[es] out of" or "relate[s] to" the acts that are alleged to constitute purposeful availment.[58]

**1.    DCI has not met its burden to show that any of the defendants has the necessary "minimum contacts" with the State of New York**

DCI has the burden of showing that the defendants have purposefully availed themselves of the New York forum. It has not done so. The only contacts it alleges with the state are the March meeting and miscellaneous phone calls and emails (themselves not specifically alleged to be directed into New York). These contacts do not represent "purposeful availment" of the State of New York, and are in any case only tangentially related to the present suit.

Briefly, Defendants did not initiate a business relationship with DCI; they did not purposefully choose to hold a meeting in New York; and they did not intend to discuss the transaction in the Complaint at that meeting when it was held. The meeting cannot, therefore, represent "*purposeful* availment" of the privilege of doing this specific piece of business in the state. Nor does the brief exploratory discussion of Ionic Bulbs at the end of the meeting reflect a purpose to do business in the state. Quite the contrary: it related entirely to a course of business to be pursued in Florida and other out-of-state locations

What is more, because the discussion at the New York meeting was only preliminary and exploratory, the allegations in this suit do not "aris[e] out of" or "relate[] to" the meeting, but rather to the later out-of-state negotiations at which crucial specifics were discussed.

Finally, the defendants' alleged phone calls and emails are jurisdictionally irrelevant because they are not alleged to have been directed to New York, and because, in any case, they were made in furtherance of an entirely non-New York based transaction.

---

[57] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) (internal quotation marks omitted).

### 2. It would be burdensome and inefficient, and thus offensive to "traditional notions of fair play and substantial justice," to subject the defendants to jurisdiction in New York

Considerations of fairness to the defendants and judicial efficiency dictate that the exercise of jurisdiction in this case would violate the "fair play and substantial justice" prong of the personal jurisdiction test. The Supreme Court has laid out the factors to be considered in analyzing this prong. They are: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[59]

First, the defendants—and particularly the individual defendants Lentine and Ramsbott—would find it hard to go to trial in New York. Their homes, businesses, and centers of operation are in Florida. They have no offices, facilities, or employees in New York, and Viatek has no officers, agents or directors there either. A finding of jurisdiction would force them to defend a lawsuit in a forum more than 1,000 miles removed from their homes and places of business, all because they were lured into the state for a two- or three-hour meeting to discuss an unrelated subject. The heavy cost of maintaining this long-distance lawsuit would be wholly out of proportion to their involvement with the state. Simple fairness to the defendants weighs against the exercise of jurisdiction here.

Second, New York has no interest in adjudicating this dispute; indeed, it has the opposite. Neither party is a New York corporation. Neither is organized under New York laws or has its principal place of business in the state. The alleged agreement also has nothing to do with New

---

[58] *Id.* at 414 n.8.

York. It was to be performed in Florida and elsewhere, and is alleged to have been breached there, too. The state's interest, therefore, is in allowing another state—one like Florida with a real interest in the dispute—to adjudicate this case.

Third, DCI has no particular interest in litigating in New York. It is not a New York corporation, and does not have its principal place of business here. Whether the case proceeds in New York or elsewhere, DCI will still have to go through the trouble and expense of out-of-state litigation, including interstate travel and the retaining of local counsel. While New York may be closer to its principal place of business than some of the alternatives, this advantage is minimal. It is far outweighed by the factors that weigh against the New York forum.

The fourth factor also weighs against jurisdiction. The interstate judicial system can most efficiently resolve this case in Florida. The alleged agreement was to have been performed there, and the acts or omissions that allegedly breached it also took place there. It follows that most of the witnesses involved probably live there too. It would be inefficient and wasteful to make them all travel to New York for trial. In addition, as described above, Florida has a greater interest in the dispute than New York, and so is a more efficient forum for its resolution.

Finally, the fifth factor is not relevant here, since no substantial issues of interstate social policy are involved in this case.

Thus, the factors that militate against jurisdiction in New York preponderate. Such jurisdiction therefore fails to satisfy "traditional notions of fair play and substantial justice."

## IV.    VENUE IS NOT PROPER IN THIS COURT

The present action must also be dismissed for lack of venue. DCI alleges that venue is proper pursuant to 28 U.S.C. § 1391(a) "since a substantial part of the events and omissions giv-

---

[59]    *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113 (1987).

ing rise to the claim occurred in the Southern District of New York [(§ 1391(a)(2))] and the defendants are subject to personal jurisdiction in the State of New York [(§ 1391(a)(3))]." (Complaint ¶ 3). Not so. Even at this early stage, no deference is owed to DCI's "legal conclusions, deductions or opinions" in the Complaint.[60] The defendants are not subject to personal jurisdiction in this district for the reasons set out above; and any "events and omissions" that took place here are only minimally and tangentially related to the claims.

The "events and omissions" alleged to have taken place in this district were insubstantial. Only one "event or omission" in this district is alleged, and that is the March meeting. But, as explained above, this meeting constituted only preliminary pre-negotiatory activity. The bulk of the negotiations, on the other hand, as well as *all* the alleged acts of performance and failure to perform, took place outside the district (and indeed, outside the state). DCI's conclusory assertion of "substantial[ity]" is therefore incorrect.

Venue is therefore not proper in this court.


## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint for lack of personal jurisdiction. Alternatively, Defendants request an evidentiary hearing to resolve the factual disputes relevant to the jurisdictional question.

In addition, the Court should dismiss the complaint on the ground of improper venue. Alternatively, the Court should transfer this case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1406.

---

[60] *Transatlantic Shiffahrtskontor GmBh v. Shanghai Foreign Trade Corp.*, 996 F.Supp. 326, 334 (S.D.N.Y. 1998) (citations omitted).

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  July 28, 2008.

By: _____
Matthew L. Levine (ML-6247)
153 E. 53rd Street, 52nd Floor
New York, New York 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Craig R. Smith (BBO 636,723)
225 Franklin Street
Boston, MA 02110-2804
Telephone: 617-542-5070
Facsimile: 617-542-8906
(application for pro hac vice admission
forthcoming)

*Attorneys for Defendants*
Viatek Consumer Products Group Inc.,
Lou Lentine, and Angelo Ramsbott

21